

# NUMBER 13-22-00144-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**CITY OF VALLEY MILLS, TEXAS,** Appellant,

**v.**

**WILLIAM CHRISMAN AND
DARRIN TROXELL,** Appellees.

---

### On appeal from the 220th District Court
### of Bosque County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Tijerina, Silva, and Peña
### Memorandum Opinion by Justice Silva

Appellees William Chrisman and Darrin Troxell brought a Texas Whistleblower Act (Whistleblower Act) suit against their former employer, appellant City of Valley Mills (the City), wherein they allege that they were terminated after making a good faith report of a

violation of law by city employee, William Linn.[1] *See* TEX. GOV'T CODE ANN. § 554.006(d). Specifically, Chrisman and Troxell complain that Linn took their personal property without their consent, and Linn's conduct amounted to theft, civil conversion, and a violation of the Texas Theft Liability Act.

By a single issue with multiple subparts, the City asserts that Chrisman and Troxell failed to plead and present evidence of jurisdictional facts sufficient to bring their claims within the purview of the Whistleblower Act; thus, the trial court erred in denying the City's plea to the jurisdiction. We reverse the trial court's denial of the City's plea to the jurisdiction and render judgment dismissing the suit.

## I. BACKGROUND

Chrisman and Troxell began their employment with the City in 2015. In 2017, they were supervised by Linn, who remained their direct supervisor until the two were terminated from their employment on July 26, 2017.

Throughout 2017 and prior to their termination, Chrisman and Troxell maintained personal deer feeders on city property. On or about July 25, 2017, the City removed the deer feeders at Linn's direction. Upon learning of the removal, Chrisman and Troxell went to city hall to speak with Linn, who refused to return the deer feeders. Chrisman then phoned Mayor Jerry Wittmer, complaining about Linn's actions. Troxell, meanwhile, called the City's Chief of Police Robert Summers, notifying him of their intent to "press charges for the City Administrator's theft of [their] deer feeders."

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

Chief Summers confirmed that he received a call on July 25, 2017, from Chrisman and Troxell seeking his advice as to how to get their deer feeders returned to them. When Chief Summers spoke with Chrisman and Troxell again the next day, however, they were now "describing the situation as a matter of 'theft.'" In response, Chief Summers told Chrisman and Troxell that the police department would not be getting involved as this was not a criminal matter. Chief Summers stated that following his conversations with Chrisman and Troxell, he had intended to speak to Linn or Wittmer concerning Chrisman and Troxell's allegations, but they were terminated before he had the opportunity.

On the morning of July 26, 2017, Chrisman and Troxell returned to work, and at the end of their shift, they were met by Linn. According to Chrisman, Linn declined to give them their timecards and handed them a document entitled "Return of Personal Property Held." Chrisman and Troxell refused to sign the document and were terminated. Chrisman and Troxell allege that Wittmer later told them: "[T]he main reason we are letting you go is because [of] this whole thing with the feeders. You should have let me handle it and you didn't[;] you got the cops involved, so you're fired." Linn asserted that he terminated Chrisman and Troxell on July 26 due to subpar job performances, refusal to work until the close of business at 5 p.m., and for their repeated disrespectful conduct towards City employees.

On July 27, 2017, Chrisman and Troxell filed a complaint against Linn. Approximately, three months later, Chrisman and Troxell filed suit alleging violations under the Whistleblower Act. *See id.* Specifically, Chrisman and Troxell argued they had been unlawfully terminated from their employment after reporting in good faith that Linn's

3

actions constituted theft, civil conversion, and a violation of the Texas Theft Liability Act. Following Chrisman and Troxell's third amended petition, the City filed its second plea to the jurisdiction on November 9, 2021—creating the basis of this appeal.[2]

In its second plea to the jurisdiction, the City argued Chrisman and Troxell have "not sufficiently pled facts that would bring this cause under the auspices of the Whistleblower Act and that no genuine issue of material fact exists as to one or more essential elements of [appellees'] claims." More specifically, the City averred that Chrisman and Troxell failed to advance the "good faith" objectivity component that our sister court previously determined to be wholly absent in appellees' initial pleadings. The City attached several exhibits to its plea to the jurisdiction, including: (1) complaints filed by Chrisman and Troxell; (2) excerpts taken from Chrisman's and Troxell's depositions; and (3) affidavits by Linn, Chief Summers, and Officer Robert Cannizzaro.

Following a hearing, the trial court denied the City's plea to the jurisdiction. This appeal followed.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 331 (Tex. 2020) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000)). Whether a trial court has subject matter jurisdiction is a question of law that we

---

[2] The events surrounding the City's initial plea to the jurisdiction and related filings can be found in our sister court's previous memorandum opinion, and we will not reiterate those events here except as necessary for the disposition of this proceeding. *See City of Valley Mills v. Chrisman*, No. 10-18-00265-CV, 2021 WL 1807365, at *1 (Tex. App.—Waco May 5, 2021, no pet.) (mem. op.).

4

review de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 682 (Tex. 2020) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

Sovereign immunity protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). Governmental immunity offers the same protections for political subdivisions of the State, including municipalities. *Id.*; *see City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). The Texas Whistleblower Act provides limited waiver of this immunity. *See* TEX. GOV'T CODE ANN. § 554.0035 (providing that that "[a] public employee who alleges a violation of [the Act] may sue the employing state or local governmental entity," and "[s]overeign immunity is waived and abolished to the extent of liability for the relief allowed under [the Act] for a violation of [the Act]"). "Accordingly, the elements of a whistleblower claim are jurisdictional facts necessary" to show that a plaintiff's "claim falls within the jurisdictional confines of" § 554.0035. *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022) (citing *State v. Lueck*, 290 S.W.3d 876, 882 (Tex. 2009)). "Because governmental immunity is jurisdictional, it is properly raised through a plea to the jurisdiction . . . ." *Maspero*, 640 S.W.3d at 528; *Miranda*, 133 S.W.3d at 228.

To prevail on an assertion of governmental immunity, the governmental defendant "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a plea to the jurisdiction challenges jurisdictional facts, our review mirrors that of a traditional summary judgment motion. *Maspero*, 640 S.W.3d at 528 (citing *Mission Consol. Indep. Sch. Dist.*

5

*v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012)). To that end, "all the evidence is reviewed in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *see Maspero*, 640 S.W.3d at 528–29 ("[W]e take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor."). "A genuine issue exists if 'the evidence is such that a reasonable jury could find that fact in favor of the non-moving party.'" *Smith v. Mosbacker*, 94 S.W.3d 292, 294 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (quoting *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied)). "Material facts are those facts which 'affect the outcome of the suit under the governing law.'" *Id.* (quoting *Moore*, 981 S.W.2d at 269). If "the pleadings and evidence generate a 'fact question on jurisdiction,' dismissal on a plea to the jurisdiction is improper," and the fact issue will be resolved at trial by the factfinder. *Maspero*, 640 S.W.3d at 529 (citing *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam)). "However, 'if the evidence is undisputed or fails to raise a fact question,' the plea must be granted." *Id.* (quoting *Hayes*, 327 S.W.3d at 116).

The Whistleblower Act "prevents a local governmental entity from firing a public employee for reporting another public employee's violation of the law to a law-enforcement authority." *City of Madisonville v. Sims*, 620 S.W.3d 375, 378 (Tex. 2020) (per curiam) (citing TEX. GOV'T CODE ANN. § 554.002(a)). "The Whistleblower Act is a broad remedial measure intended to encourage disclosure of governmental malfeasance and corruption." *City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008). Thus, it is to

6

be liberally construed in favor of jurisdiction. *See Sims*, 620 S.W.3d at 379 (citing TEX. GOV'T CODE ANN. § 554.0035); *Scott v. Godwin*, 147 S.W.3d 609, 621 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.); *see also Perez v. Cameron County*, No. 13-17-00581-CV, 2018 WL 6219630, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 29, 2018, no pet.) (mem. op.).

The employee bears the burden of proving a claim under the Whistleblower Act. *Pridgen*, 653 S.W.3d at 182 (citing TEX. GOV'T CODE ANN. § 554.004(a)). To prevail, the employee must "show that he (1) reported (2) a violation of law by the employer or another public employee (3) to an appropriate law enforcement authority, (4) the report was made in good faith, and (5) the adverse action would not have occurred when it did if the employee had not reported the illegal conduct." *Id.* (citing first TEX. GOV'T CODE ANN. § 554.002(a); then citing *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000) (discussing the required causal link between the report and the adverse employment action)). The term "good faith" is undefined by the statute; however, the Texas Supreme Court has consistently defined the term as follows: "when (1) the employee believes the reported information will facilitate identifying or investigating a violation of law by the employing governmental entity or another public employee, and (2) the employee's belief is reasonable in light of the employee's training and experience." *Pridgen*, 653 S.W.3d at 184; *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002). In other words, the good-faith inquiry under the Whistleblower Act has both subjective and objective components. *Univ. of Hous. v. Barth*, 403 S.W.3d 851, 856 (Tex. 2013) (per curiam).

7

Finding the "good faith" objective element to be dispositive, we address this first. *See* TEX. R. APP. P. 47.1.

### III.    DISCUSSION

To meet the objective component of good faith, Chrisman and Troxell bore the burden to adduce evidence raising a material fact issue regarding whether their belief that Linn had committed a violation of law—namely, theft, civil conversion, and a violation of the Texas Theft Liability Act—was reasonable in light of their training and experience. *See Barth*, 403 S.W.3d at 856; *Tex. Dep't of Human Services v. Okoli*, 440 S.W.3d 611, 614 (Tex. 2014) (providing that the objective standard cannot ignore the perspective of "a reasonably prudent employee in similar circumstances"). At the outset we note that a person commits the offense of theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03. The City is considered the "owner" of property if, among other things, the City either (1) possessed the property, whether lawfully or unlawfully, or (2) had a greater right to possess the property than did the individual claiming ownership. *See id.* § 1.07(35)(A); *see also Harper v. State*, No. 13-15-00548-CR, 2017 WL 5505743, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 16, 2017, no pet.) (mem. op., not designated for publication) (applying this definition for city ownership of property). "Possession" is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(39). Pursuant to the Texas Theft Liability Act, a "person who commits theft is liable for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE ANN. § 134.003. Meanwhile, conversion has been defined as "the wrongful exercise of dominion and control over another's property in denial of or

8

inconsistent with his rights." *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 210 n.44 (Tex. 2002) (quoting *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997))).

To address the "good faith" objectivity component, Chrisman and Troxell amended their pleading alleging the following:

12. In addition, plaintiffs' beliefs were reasonable in light of their respective training and experience. Neither plaintiff had attended any law enforcement school or academy; and neither had any training relative to an understanding of "theft" or "to steal" which would differentiate them from the general public. [Chrisman] believes "theft" is defined as "when somebody takes something that is not theirs without the permission of the owner." [Chrisman] believes "to steal" is defined as "to take something that does not belong to you without permission from the owner to take it." [Troxell] believes "theft" is defined as "when a person takes something that does not belong to them." [Troxell] believes "to steal" is "when someone takes something that does not belong to them."

13. And, both plaintiffs, based on their training and experience, reasonably believed it appropriate to report the theft of property to members of the Valley Mills Police Department because reports of a crime are made to the police. Both also believed the City Administrator's supervisor, [Whittmer], was the appropriate authority to report a criminal violation, the civil conversion, and the breach of the Texas Theft Liability Act to because the City Administrator's supervisor could take appropriate action to remedy such violations and/or cause the return of their property to them.

The City asserts that Chrisman's and Troxell's amended pleadings amount to unsupported opinions and baseless conclusions, fail to identify specific evidence that would have led a reasonable person with the same level of training and experience to believe that Linn violated the law, and ignore all evidence to the contrary. *See Pridgen*, 653 S.W.3d at 184 ("Communicating unsupported opinions or legal conclusions is insufficient."). Having reviewed the jurisdictional evidence, we agree with the City.

Linn stated in his affidavit attached to the City's plea to the jurisdiction that he began directly supervising Chrisman and Troxell in March 2017 after the men were

9

stripped of their titles as co-directors of the City's Public Works Department. It was then that Linn purportedly informed appellees that no one was permitted to hunt on city-owned property because the City did not have the requisite insurance coverage. "[T]here was not—and has never been, to my knowledge—any license, lease, or other written authorization allowing anyone to hunt on [c]ity-owned property, including employees," said Linn. According to Linn, Chrisman and Troxell were aware of this prohibition, were asked to enforce this policy, and had been instructed to remove personal deer feeders on city property on at least two occasions between March and July 2017. Officer Cannizzaro confirmed via affidavit that Linn told him that Chrisman and Troxell's awareness of the prohibition preceded the events of July 26.

In Chrisman's deposition, he acquiesced to an incident in early 2017 wherein Chrisman and Troxell, acting under Linn's direction, removed another individual's personal deer feeder from city property. At the time of the deer feeder's removal, Chrisman stated that he informed the individual that personal deer feeders were not permitted on city property, explaining: "You can't have it on city property. That's city property, you can't have it there." Troxell does not dispute that they had previously removed personal deer feeders belonging to other individuals off city property and that this occurred without warning on at least one occasion.

Thus, irrespective of whether Chrisman and Troxell were, in fact, previously warned that they could no longer keep their personal deer feeders on city property, Chrisman and Troxell engaged in the same conduct as part of their employment that they now accuse Linn of doing. Yet, Chrisman and Troxell do not characterize their actions as

10

unlawful, and they do not dispute the legitimacy of the information they relayed to the private citizen *after* his deer feeder was removed without warning—that is, that personal deer feeders located on city property were subject to removal. To the extent that Chrisman and Troxell's complaints meant to challenge administrative polices that were not followed, such actions are not protected under the Whistleblower Act. *See Tex. Health & Human Servs. Comm'n v. Pope*, 674 S.W.3d 273, 288 (Tex. 2023) ("A report expressing disagreement with remedial measures taken or internal policy recommendations is not a report of a violation of law that the Whistleblower Act was designed to protect. Nor does the Act protect a prediction of possible regulatory noncompliance, or a complaint that internal administrative policies were not followed.") (cleaned up).

The objective component of good faith is satisfied when "the employee's belief was reasonable in light of the employee's training and experience." *El Paso Healthcare Sys. v. Murphy*, 518 S.W.3d 412, 419 (Tex. 2017). For reasons stated above, Chrisman and Troxell failed to present evidence that their belief was reasonable considering their training and experience, and we need not address whether the reports were made to an appropriate law enforcement authority or whether the causational element is present. *See* Tex. R. App. P. 47.1; *City of S. Houston v. Rodriguez*, 425 S.W.3d 629, 636–37 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also Crystal City Indep. Sch. Dist. v. Flores*, No. 08-23-00021-CV, 2023 WL 6168262, at *6 (Tex. App.—El Paso Sept. 21, 2023, no pet. h.) (mem. op.) (determining it was objectively unreasonable for employee to believe colleague's failing to clock out for a week as a salaried employee, getting her supervisor's approval for timekeeping errors after the edits had been entered, "cleaning"

11

the timekeeping system, and scheduling training on the timekeeping system through the software vendor, rather than the region while on duty constituted theft); *Austin Indep. Sch. Dist. v. Anderson*, No. 03-21-00286-CV, 2022 WL 3649357, at *7 (Tex. App.—Austin Aug. 25, 2022, no pet.) (mem. op.) (determining it was objectively unreasonable for employee to believe colleague's sleeping while on duty constituted theft). Because Chrisman and Troxell failed to meet their burden to show that their report was made in "good faith," as that term has been interpreted by the courts, their Whistleblower Act claim necessarily fails, and they cannot show the jurisdictional facts necessary to sustain this cause. *See Pridgen*, 653 S.W.3d at 182. Thus, the trial court erred in denying the City's plea to the jurisdiction as to this claim. We sustain the City's sole issue.

## IV. CONCLUSION

We reverse the trial court's denial of the City's plea to the jurisdiction and render judgment dismissing the suit.

CLARISSA SILVA
Justice

Delivered and filed on the
16th day of November, 2023.

12